**UNITED STATES of America, Plaintiff,**

v.

**STATE OF ALABAMA, Charles A. Boswell, Commissioner of Alabama Department of Revenue, and Ralph P. Eagerton, Jr., Secretary of Alabama Department of Revenue, Defendants.**

**Civ. A. No. 77–58–N.**

United States District Court,
M. D. Alabama, N. D.

July 13, 1977.

---

Ira DeMent, U. S. Atty., M. D. Ala., Montgomery, Ala., David J. Anderson and Lawrence J. Jenson, Dept. of Justice, Washington, D. C., for the United States.

William J. Baxley, Atty. Gen., and Herbert I. Burson, Jr., and John J. Breckenridge, Asst. Attys. Gen., Dept. of Revenue, Montgomery, Ala., for defendants.

JOHNSON, Chief Judge.

## MEMORANDUM OPINION

This is a suit filed on behalf of the Administrator of the National Credit Union Administration (NCUA) by the United States against the State of Alabama, Charles A. Boswell, in his official capacity as Commissioner of the Alabama Department of Revenue, and Ralph P. Eagerton, Jr., in his official capacity as Secretary of the Alabama Department of Revenue. The suit seeks to have Title 47, Section 336, and Title 51, Section 131(g)–(h) of the *Code of Alabama* declared unconstitutional as applied to the NCUA and to have the enforcement of these sections enjoined. This Court has jurisdiction under 28 U.S.C. § 1345.

The case is now before the Court on cross motions for summary judgment filed by the United States and by the State of Alabama. The issue which this Court must decide is: may the State of Alabama, in enforcing its Uniform Disposition of Unclaimed Property Act, order the records of members of the federal credit unions located in the state to be made available for inspection by auditors of the Department of Revenue. The facts are not in dispute and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate. The United States contends that the state may not require the various credit unions in Alabama to allow inspection of their records by state auditors, arguing that the Alabama statutes, codified in Section 336 of Title 47 and Section 151(g)–(h) of Title 51 are preempted by the National Credit Union Act, 12 U.S.C.A. §§ 1751 *et seq.* It is

the position of the United States that the Administrator of the NCUA is given "the exclusive right to examine federal credit union records." The state, on the other hand, contends that it only needs to inspect certain records and then only for the limited purpose of determining whether the credit union has in its control abandoned property which should be turned over to the state. The state's position is that, since the state does not attempt to exert any control over the policy and operations of the credit unions and since the only purpose of requiring inspection of the records of these credit unions is to enforce the abandoned property statute, there is no conflict with the federal statute such that enforcement of the Alabama statute is preempted by the federal statutory scheme.

The two statutes that are alleged to be in conflict are 12 U.S.C.A. § 1756 and Title 47, Section 336 of the *Code of Alabama.* The federal statute provides:

> . . . Each Federal credit union shall be subject to examination by, and for this purpose shall make its books and records accessible to, any person designated by the Administrator. . . .

The Alabama statute provides:

> The commissioner of revenue may at reasonable times and upon reasonable notice examine the records of any person if he has reason to believe that such person has failed to report property that should have been reported pursuant to this chapter.

The federal act contains no express preemption provision. Therefore, the Court must fall back on general principles established by the Supreme Court and applicable to preemption cases. This case is in a posture similar to the recent case of *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). In *Rath Packing*, the Supreme Court mapped out, in detail, the route to be followed by the Court in determining whether Alabama's statute is preempted by the federal law.

> In its present posture, this litigation contains no claim that the Constitution alone denies California power to enact the challenged provisions. . . .

Our prior decisions have clearly laid out the path we must follow to answer this question ["whether the federal laws which govern respondents' packing operations preclude California from enforcing § 12211, as implemented by Art. 5"]. The first inquiry is whether Congress, pursuant to its power to regulate commerce, U.S.Const., Art. 1, § 8, has prohibited state regulation of the particular aspects of commerce involved in this case. Where, as here, the field which Congress is said to have pre-empted has been traditionally occupied by the States, . . . "[w]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947). This assumption provides assurance that "the federal-state balance," *United States v. Bass*, 404 U.S. 336, 349 [92 S.Ct. 515, 523, 30 L.Ed.2d 488] (1971), will not be disturbed unintentionally by Congress or unnecessarily by the courts. But when Congress has "unmistakably . . . ordained," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633 [93 S.Ct. 1854, 1859, 36 L.Ed.2d 547] (1973); *Rice v. Santa Fe Elevator Corp., supra* [331 U.S.] at 230 [67 S.Ct. 1146 at 1152].

Congressional enactments that do not exclude all state legislation in the same field nevertheless override state laws with which they conflict. U.S.Const., Art. VI. The criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established in our decisions. Our task is "to determine whether under

the circumstances of this particular case, [the state's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1940). Accord, *De Canas v. Bica*, 424 U.S. 351, 363 [96 S.Ct. 933, 940, 47 L.Ed.2d 43] (1976); *Perez v. Campbell*, 402 U.S. 637, 649 [91 S.Ct. 1704, 1711, 29 L.Ed.2d 233] (1971); *Florida Lime & Avocado Growers, Inc. v. Paul, supra* [373 U.S.] at 141 [83 S.Ct. 1210 at 1217]; *id.*, at 165 [83 S.Ct. 1210 at 1229] (White, J., dissenting). This inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written. *See De Canas v. Bica, supra* [424 U.S.] at 363–365 [96 S.Ct. 933 at 940–941]; *Swift & Co. v. Wickham*, 230 F.Supp. 398, 408 (S.D.N.Y. 1964), appeal dismissed, 382 U.S. 111 [86 S.Ct. 258, 15 L.Ed.2d 194] (1965), aff'd, 364 F.2d 241 (CA2 1966), cert. denied, 385 U.S. 1036 [87 S.Ct. 776, 17 L.Ed.2d 683] (1967).

430 U.S. at 525, 97 S.Ct. at 1309.

■ There is no claim on the part of the government that Alabama lacks the power to enact Title 47, Section 336. Indeed, although not dispositive of the issue as both parties point out in brief, twenty-six states have enacted the Uniform Disposition of Unclaimed Property Act, and, as noted by the government, ten other states have statutes that are similar. Control over the ownership and transfer of property, both real and personal, is an area traditionally left to the states under the rubric "police power." *See Berman v. Parker*, 348 U.S. 26, 31–32, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

■ At the outset it should be recognized that the Alabama and federal statutory schemes do not attempt to occupy the same field. As is obvious, the federal act is an attempt to establish, regulate and provide uniformity for federal credit unions whereas the Alabama Uniform Disposition of Unclaimed Property Act provides a simplified method whereby the state may take possession of abandoned property, holding it until the rightful owner claims it. As the drafters of the Alabama act note, the Uniform Disposition of Unclaimed Property Act is *not* an escheat statute. Rather, the state merely becomes the custodian of the property in the unlikely event that the owner should eventually claim it. The act requires perpetual record keeping. *See* 8 Uniform Laws Annotated 83. Since the area of operation of the Alabama act is one traditionally left for the states, the rule of *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) is applicable. Thus, the Alabama act will not be superseded by the federal statute unless that was the "clear and manifest purpose of Congress."

■ That Congress did not have such a purpose in mind when it adopted the Federal Credit Union Act is evident from an examination of the act. Not only is there lacking a preemptive section as in other acts (*e. g.*, Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751 *et seq.*), the Federal Credit Union Act specifically authorizes the states to act within this sphere. Title 12, Section 1771, United States Code, provides the procedure whereby a federal credit union may convert to a state credit union, and vice versa. *A fortiori*, the federal act does not preclude the states from operating in *other* areas traditionally left to their control. Therefore, this is not a situation where Congress has "unmistakably . . . ordained" that its acts alone will regulate a given area of commerce. *See Florida Lime and Avocado Growers, Inc. v. Paul, supra.*

The government, apparently realizing that the two statutory schemes are not in direct, explicit conflict, argues that "the Federal Credit Union Act 'embrace[s] the entire field . . . leaving no field for state supervision.'" This position misses on two points. First, the federal act expressly provides for existence of state credit unions. 12 U.S.C. § 1771. Second, the Alabama statute, as the state most forcefully asserts, is not an attempt to regulate the policies or practices of the NCUA. The government concedes that the state has a

right to claim abandoned property within its boundaries and that federal credit unions must comply with the Alabama Uniform Disposition of Unclaimed Property Act. Given the admitted validity of the Alabama statute, it is hard to imagine how the state can enforce the provisions of the act without some limited right to audit the records of the financial institutions in which unclaimed property may exist.

The government contends that the state has two options. It may depend on the NCUA Administrator's report to the state or it may request permission to examine the records of specific individuals. As the state points out in its brief, the first alternative in the past has been ineffective. From examinations, made by the state, 75 per cent of the federal credit unions in the state were not in compliance with the act. The second alternative, to request the records of specific individuals, is unworkable.

■ The final hurdle which the state act must pass is the "conflict" test. In other words, does Alabama's law "[stand] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"? *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1940). In this regard, the government contends that the Administrator of the NCUA is given the "exclusive right to examine federal credit union records." The government's argument rests on an interpretation of 12 U.S.C. § 1756, which provides that federal credit unions are subject to examination by any person designated by the Administrator and that the federal credit union shall make its books available to such person. In resting its argument on an interpretation of this section, the government appears to overlook two other important provisions of the act. First, section 1752a(f), passed in 1970, provides that the NCUA's financial transactions "shall be audited by the General Accounting Office in accordance with the principles and procedures applicable to commercial corporate transactions and under such rules and regulations as may be prescribed by the Comptroller General of the United States." The right to audit the

NCUA necessarily includes the right to audit its members. Second, section 1757 provides that federal credit unions may sue or be sued. This waiver of sovereign immunity subjects a federal credit union to the liberal discovery provisions of the Alabama and federal procedure rules. A party in such a suit would have the right to examine any records which are relevant to the suit and which are not otherwise privileged. *See, e. g., Federal Rules of Civil Procedure* 26(b)(1).

Conceding that the records of individual federal credit unions are under the control of the Administrator, and assuming *arguendo* that such records are under the Administrator's *exclusive* control, the regulations enacted pursuant to the Federal Credit Union Act provide that such records shall be made available to the state when necessary for enforcement of its laws.

No record or item of information concerning an individual which is contained in a system of records maintained by the Administration shall be disclosed by any means of communication to any person, or to another agency, without the prior written consent of the individual to whom the record or item of information pertains, *unless the disclosure be—*

*(g) To another agency or to an instrumentality of any governmental jurisdiction within . . . the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the Administration specifying the particular portion desired and the law enforcement activity for which the record or item is sought.*

12 C.F.R. § 720.28 (1976). " 'System of records' means a group of any records *under the control of the Administration* from which information is retrieved by the name of the individual . . . ." 12 C.F.R. § 720.21 (1976). In addition, pursuant to 12 C.F.R. § 720.28, the records under the control of the Administrator must be furnished to the Bureau of Census, the Comptroller General Congress, the National Archives,

and others. Thus, it is clear that not only are the records available to the state in the particular factual situation of this suit, they also are available to other federal or state agencies that have a legitimate need for such records. Therefore, the government's argument that the records are under the "exclusive control" of the Administrator is completely without merit.

Judgment will be entered in accordance with this opinion.