HOLMES, Judge.
The defaulting debtor appeals from a judgment of the Circuit Court of Madison County determining that federal credit unions are exempt from the provisions of the Alabama Consumer Credit Act (the Mini-Code), §§ 5-19-1 et seq., Code of Ala.1975.
Specifically, the debtor contends the trial court erroneously awarded an attorney’s fee of 20% of the unpaid balance of the loan upon which he had defaulted. We affirm.
The facts are as follows: The debtor obtained a loan of $2,000 from Redstone Federal Credit Union, signing a promissory note which incorporated a consumer disclosure statement. The note provided that, upon default, debtor would pay a reasonable attorney’s fee. Debtor later encountered financial difficulties, and finding himself unable to meet this obligation, defaulted. The fact of default was not disputed, and the trial judge awarded an attorney’s fee of 20% of the unpaid principal.
Debtor concedes this amount is a reasonable fee if the Federal Credit Union Act, 12 U.S.C.A. §§ 1751 et seq., applies since it does not regulate attorney’s fees. However, he contends the transaction was subject to the Mini-Code and § 5-19-10 thereof:
With respect to an original principal amount or original amount financed not exceeding $300.00, a consumer credit contract may not provide for payment by the debtor of attorney’s fees. With respect to larger amounts, the contract may provide for the payment by the debtor of reasonable attorney’s fees not exceeding 15 percent of the unpaid debt after default .... A provision in violation of this section is unenforceable.
Thus, the debtor, through able counsel, argues that the contract providing for “reasonable attorney’s fees” on the $2,000 loan is in violation of the statute and is therefore unenforceable.
The dispositive issue presented is whether the provisions of our Mini-Code controlling consumer credit transactions are applicable to federal credit unions created and organized by Congress. Put another way, we must decide whether Congress has preempted the field and legislated exclusively concerning such credit unions, removing them from state control.
At the outset, we note that this court has very recently held that the Mini-Code applies to credit unions organized pursuant to state law. McCartha v. Iron & Steel Credit Union, Ala.Civ.App., 373 So.2d 328 (1979). Finding no need to repeat in depth what was said there, we do acknowledge that the opinion contains broad language which could be read as extending said code’s coverage to federal credit unions. However, a state chartered credit union was involved in that case, and we hereby expressly limit its reach to such entities.
Such a reading of McCartha, supra, is supported by the also very recent legislative amendment to the Mini-Code’s definition of “creditor.” Section 5-19-1(3), Code of Ala. *51 1975, as amended by Act No. 79-428, 1979 Ala. Acts, Regular Session (approved July 19, 1979), reads in pertinent part:
The provisions of this chapter shall exclusively control the permitted activities and restrictions of any state-chartered credit union or its officers and directors to the extent that this chapter permits or proscribes any conduct; the provisions of this chapter being intended to preempt all existing legislation.
As is contended in an excellent amicus curiae brief filed in this case, it is a well settled principle of statutory construction that where a statute enumerates certain things on which it is to operate, the statute is to be construed as excluding from its effect all things not expressly mentioned. Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973). In applying this doctrine, we note the legislature has seen fit to expressly include only state chartered credit unions. The clear implication is that federally chartered credit unions are to be left to the provisions of federal law.
In any event, we conclude that Congress has unmistakingly removed federal credit unions from any control by the states. In a case such as this, where a conflict arises between a state’s regulatory police powers and the powers of the federal government, we assume that state’s powers are not to be superseded by the relevant federal act unless such pre-emption was the clear and manifest purpose of Congress. Courts have recognized such intent may be either explicit, as when there is a pre-emption clause, or implicit. The latter occurs when the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it. Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978).
Although there is no express preemption provision in the Federal Credit Union Act, 12 U.S.C.A. §§ 1751 et seq., such credit unions are placed under the administrative authority of the National Credit Union Administration. 12 U.S.C.A. § 1756. This agency’s board must report to Congress at least annually and “set forth such information as is necessary for the Congress to review the financial program approved by the Board.” 12 U.S.C.A. § 1752a(d). Regulations pertaining to the conduct of federal credit unions are found at CFR Tit. 12, C. 7, §§ 700.1 et seq.
We find in this extensive scheme sufficient indicia of the intent to pre-empt. Indeed, Judge Frank M. Johnson, now of the U. S. Court of Appeals for the 5th Circuit, while deciding the Federal Credit Union Act does not foreclose the legitimate exercise of a state’s legislative authority in a totally unrelated field, has recently recognized that the federal scheme is an obvious attempt to establish, regulate, and provide uniformity for federal credit unions. See, United States v. State of Alabama, 434 F.Supp. 64 (M.D.Ala.1977). Our sister state of Georgia has likewise held that the federal government has acted exclusively here, rejecting the argument that room is left for state legislation on the same subject. Christian v. Atlanta Army Depot Federal Credit Union, 140 Ga.App. 277, 231 S.E.2d 7 (1976).
The few courts that have confronted this problem have concluded federal credit unions are federal fiscal agents very similar to national banks. Christian, supra. They have therefore utilized the line of cases which hold that the states can exercise no control over national banks except insofar as Congress may permit. McAnally v. Ideal Federal Credit Union, Okl., 428 P.2d 322 (1967). See, Farmers’ & Mechanics’ National Bank of Buffalo v. Dearing, 91 U.S. 29, 23 L.Ed. 196 (1875). Since the Federal Credit Union Act, unlike certain portions of the National Bank Act, 12 U.S.C.A. §§ 21 et seq., does not contain any provisions allowing state control in a few narrowly circumscribed areas, the federal legislation prevails in all respects.
Finally, we reject appellant’s contention that the above referenced cases are distinguishable in that they involve explicit conflicts between the federal act and the various state legislative acts concerning maximum allowable interest rates. As there is no provision in the Federal Credit Union Act or in the regulations concerning attor *52 ney’s fees, appellant urges us to, in effect, “plug” our Mini-Code’s provisions into this purported gap.
In this instance, we conclude that the failure to set express limits on attorney’s fees results from the implicit determination that such action is not needed. Attorney’s fees, unlike interest rates, are subject to judicial control and are not a potential trap for the unwary borrower. When such considerations are present, courts have recognized that the failure of federal officials to completely exercise their regulatory authority in all possible spheres need not be interpreted to mean that room is necessarily left for state action. Such federal inaction can take on the character of a policy that no specific federal regulation is appropriate or approved under the federal statute in question. In such a situation, states are not necessarily permitted to use their police power to enact their own regulations to fill the purported void. Ray v. Atlantic Richfield Co., supra.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P. J., and BRADLEY, J., concur.