PER CURIAM.
This case involves the question of whether federal credit unions are exempt from the provisions of the Alabama Consumer Credit Act (the Mini-Code, §§ 5-19-1, et seq., Code 1975). Specifically, the issue is whether the Mini-Code’s provision which limits recovery of attorney’s fees to 15% of the unpaid debt will apply to a federal credit union loan. The Alabama Court of Civil Appeals, in Davis v. Redstone Federal Credit Union, 401 So.2d 49 (Ala.Civ.App., 1979), held that the Mini-Code was preempted by the extensive federal regulations which govern federal credit unions. We reverse.
The doctrine of preemption has its application when both state and federal statutes and regulations seek to operate in the same area or to govern the same activity. Preemption is traditionally applied in the following circumstances: When state regulation has been expressly prohibited by Congress, Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed.2d 1447 (1947); when Congress has “unmistakably ordained,” either expressly or implicitly, that federal regulations alone will govern an area or activity, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); or when the state regulations either conflict with or create an obstacle to the accomplishment of a valid congressional purpose, Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). We will discuss each circumstance as it applies to the facts in the instant case.
The statutory framework creating federal credit unions is both extensive and detailed. See 12 U.S.C. §§ 1751, et seq. Provisions for the creation, organization, operation and liquidation of credit unions have been established. Additionally, procedures for converting state credit unions to federal credit unions, and vice versa, have been outlined. Nowhere in those regulations, however, is there any provision which expressly prohibits state regulation of federal credit unions. Therefore, the application of the Alabama Mini-Code to federal credit unions cannot fall on that basis.
The issue of whether Congress has “unmistakably ordained” that federal regulations alone will govern federal credit unions is similarly disposed of. Clearly, as in the case of an express prohibition, Congress has not expressly ordained that the federal law alone will control. Whether Congress has implicitly ordained that result depends upon the scope of the regulations and the interests or purposes they advance; it has been stated that preemption is in order when “[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it”, or when “the Act of Congress [touches] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject” Rice v. Santa Fe Elevator Corp., supra, 331 U.S. at 230, 67 S.Ct. at 1152.
The stated purpose for a federal credit union is the promotion of “thrift among its members and [the creation of] a source of credit for provident or productive purposes.” 12 U.S.C. § 1752(1). This is identical to the stated legislative purpose for those credit unions chartered under the laws of Alabama, Code 1975, § 5-17-1, as well as other states. See, e. g., La Caisse Populaire Ste. Marie v. United States, 563 F.2d 505, 509 (1st Cir. 1977); State v. Price, 168 Ohio St. 499, 156 N.E.2d 316, 318 (1959). The promotion of thrift and the creation of sources of credit for productive purposes are interests of great concern on both local and national levels. These concerns are greatest, however, in the local community where the credit union operates as it is within that community that the fruits of the credit union’s operation will be distributed and have their greatest and most direct impact. Because of this significant local interest, we find that the Federal Credit Union Act does not create a circumstance for implicit preemption as the Act does not regulate an activity in which there *54 is a “dominant” federal interest to justify the preclusion of all state regulation.
As we have noted, the statutory framework establishing federal credit unions is both detailed and extensive. That fact alone, however, does not give rise to the “inference that Congress left no room for the States to supplement it.” Quite to the contrary, the court in United States v. State of Alabama, 434 F.Supp. 64 (M.D.Ala.1977), found that the provisions of the Alabama Uniform Disposition of Unclaimed Property Act could be applied to records held by a federal credit union. The court in that action stated:
That Congress did not have such a purpose [of preempting all state regulation] in mind when it adopted the Federal Credit Union Act is evident from an examination of the Act. Not only is there lacking a preemptive section as in other acts (e. g., Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 et seq.), the Federal Credit Union Act specifically authorizes the states to act within this sphere. Title 12, Section 1771, United States Code, provides the procedure whereby a federal credit union may convert to a state credit union, and vice versa. A fortiori, the federal act does not preclude the states from operating in other areas traditionally left to their control. Therefore, this is not a situation where Congress has “unmistakably ... ordained” that its acts alone will regulate a given area of commerce. See Florida Lime and Avocado Growers, Inc. v. Paul, supra.
434 F.Supp. at 67.
The most persuasive evidence that Congress did not intend to preempt all state regulation of federal credit unions is found in the most recent amendments to the Federal Credit Union Act. Regulations concerning the interest rates chargeable by a federal credit union are set out in two sections. Section 1757 outlines the general powers of federal credit unions; Subsection (5)(A)(vi) provides that, without special authorization, the maximum interest a credit union may charge on a loan to a credit union member may not exceed fifteen per centum. Section 1785 set out those regulations applicable to insured credit unions.[1] Subsection (g)(1), pertaining to interest rates, provides:
If the applicable rate prescribed in this subsection exceeds the rate an insured credit union would be permitted to charge in the absence of this subsection, such credit union may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this subsection, take, receive, reserve, and charge on any loan, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such insured credit union is located or at the rate allowed by the laws of the State, territory, or district where such credit union is located, whichever may be greater.
The crucial provisions pertaining to this section are contained in the section setting forth the effective dates of the amendment, where it is stated:
The amendments made by [Section 1785(g)(1)] ... shall apply only with respect to loans made in any State during the period beginning on April 1,1980, and ending on the date, on or after April 1, 1980, on which such State adopts a law or certifies that the voters of such State have voted in favor of any provision, constitutional or otherwise, which states explicitly and by its terms that such State does not want the amendments made by [Section 1785] to apply with respect to loans made in such State, except that such amendments shall apply to a loan *55 made on or after the date such law is adopted or such certification is made if such loan is made pursuant to a commitment to make such loan which was entered into on or after April 1, 1980, and prior to the date on which such law is adopted or such certification is made. (Emphasis added.)
Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L.No. 96-221, § 525, 94 Stat. 132 (1980). This amendment allows the states, in limited circumstances, to have some voice in the interest rates charged by a federal credit union and, most importantly, indicates that Congress never intended to totally preempt all state regulation of the subject matter.
Although we find that the most recent amendments to the Federal Credit Union Act evince a congressional intent not to foreclose all forms of state regulation, our inquiry does not end there. As the United States Supreme Court has stated:
Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found “where compliance with both federal and state regulations is a physical impossibility ...” Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), or where the state “law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Hines v. Davidowitz, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941); Jones v. Rath Packing Co., supra [430 U.S. 519], at 526, 540-541 [97 S.Ct. 1305 at 1310, 1316-1317, 51 L.Ed.2d 604], Accord, De Canas v. Bica, 424 U.S. 351, 363 [96 S.Ct. 933, 940, 47 L.Ed.2d 43] (1976).
Ray v. Atlantic Richfield Co., 435 U.S. 151, 158, 98 S.Ct. 988, 994-95, 55 L.Ed.2d 179 (1978).
We find no actual conflict between statutes in the present case: the Alabama Mini-Code limits the amount of attorney’s fees recoverable in loan default actions, and the Federal Credit Union Act does not address the issue of attorney’s fees. Nor do we find that the application of the Mini-Code creates an obstacle to the accomplishment of the objective of promoting thrift and creating sources of credit, both of which are the fundamental purposes for federal credit unions.
Based upon the foregoing analysis, we find that the provisions of Alabama’s Mini-Code limiting attorney’s fees are not preempted by the Federal Credit Union Act and that those specific limitations are applicable to loans made by federal credit unions. Therefore, the decision of the Court of Civil Appeals is due to be reversed.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.

. “The term ‘insured credit union’ means any credit union the member accounts of which are insured in accordance with the provisions of title II of this Act.” 12 U.S.C. § 1752(6). According to the provisions of 12 U.S.C. § 1781, all federal credit unions must be insured in accordance with the provisions of the Act. Therefore, by definition, all federal credit unions are “insured credit unions” and are subject to those regulations pertaining to insured credit unions.