BOLIN, Justice.
Evan W. Smith appeals from a judgment against him in an action filed by Billie C. Burkhalter, Jimmy Wallace, and Lenora McWhorter contesting the results of the Town of Cedar Bluffs election for mayor and two places on the Town’s council.

Facts and Procedural History

On August 26, 2008, the Town of Cedar Bluff held a general election for the office of mayor and two positions on the Town’s council. Wallace ran for mayor against Ethel Sprouse, Steve Lay, and Dale Reese. Burkhalter and Smith, along with another candidate, sought election to the council position for district one and McWhorter and Donald Sanders sought election to the *731 council position for district two. On September 2, 2008, the Town of Cedar Bluff certified the following results and concluded that a runoff election was necessary between Lay and Sprouse for the mayoral race[1] and between Burkhalter and Smith for the district-one council position[2] and that Sanders was elected to the council position for district two.[3] The runoff election was scheduled for October 7, 2008.
On September 3, 2008, Wallace, Burk-halter, and McWhorter (hereinafter referred to collectively as “the contestants”) filed an election contest, pursuant to § 11-46-69, Ala.Code 1975. The contestants claimed that illegal absentee ballots were cast at the August 26, 2008, general election, which, if excluded, would change the results of the election in their favor.[4] The contestants claimed, among other things, that absentee ballots were cast by persons whose ballots had not been properly delivered to the absentee voters. The Town was named as a defendant along with all the other candidates for the three offices that were the subject of the contest. The contestants filed a motion for a preliminary injunction asking the circuit court to postpone the runoff elections scheduled for October 7, 2008.
On September 5, 2008, the Town of Cedar Bluff filed its answer. That same day, the contestants filed an amendment to their complaint alleging that absentee ballots “were picked up from the town clerk’s office by agents of certain candidates” and “were neither hand mailed nor hand delivered to each respective elector by the [Town’s clerk] as required in Alabama Code [1975,] 17-11-5.” On September 8, 2008, mayoral candidate Sprouse filed a motion to dismiss the contestants’ complaint on the ground that the circuit court lacked subject-matter jurisdiction because, she argued, § 11-46-69, Ala.Code 1975, authorizes a contest of a municipal election only when a person has actually been “declared elected” to the office and no person had yet to been declared elected to the offices they were seeking in the general election. On September 9, 2008, the contestants filed a response to Sprouse’s motion, arguing that § 11-46-69 provided that an election contest may be brought “by any person who was at the time of the election a qualified elector of such ... town” and that Sprouse’s interpretation of § 11-46-69 was in direct conflict with the purpose of the election-contest statute.
On September 10, 2008, district-one candidate Smith filed a motion to dismiss on the ground of insufficiency of process. Smith also argued that the election contest was barred by the five-day limitations period in § ll-46-69(b), because the service of process had been insufficient. That same day, district-two candidate Sanders filed a motion to dismiss on the grounds of lack of subject-matter jurisdiction under § 11-46-69 and insufficient service of process. On September 11, 2008, the contestants filed a response to Smith’s and Sand *732 ers’s motions to dismiss. On September 29, 2008, the circuit court held a hearing on the motions to dismiss, and on September 30, 2008, the circuit court denied the motions. The court also stayed the runoff election scheduled for October 7, 2008. On October 3, 2008, mayoral candidate Lay died, and a suggestion of death was filed with the court along with a motion to dismiss Lay from the election contest. On October 6, 2008, Smith filed his answer and asserted several affirmative defenses including lack of subject-matter jurisdiction, insufficient service of process, and the five-day statute of limitations applicable to municipal-election contests.
On October 14, 2008, the contestants filed a motion entitled “Plaintiffs’ First Notice of Nature of Evidence and Motion For Summary Judgment.” In this motion, the contestants asserted that there were several reasons that many of, if not all, the absentee ballots should be excluded, but the contestants asked the court to make a determination as to whether the disputed absentee ballots had been improperly delivered to the voters by the Town’s clerk. Specifically, the contestants argued that § 17-11-5, Ala.Code 1975, provides that the “absentee election manager” shall furnish absentee ballots to the applicant for the ballot by United States Mail or by personally handing the absentee ballot to the voter who intends to vote by absentee ballot. They argued that the Town’s clerk, as absentee election manager, admitted that she mistakenly allowed persons other than the actual absentee voters who intended to vote by absentee ballot to pick up the ballots. They contended that a secretary for Smith picked up some absentee ballots and that a person campaigning for Sanders had picked up some absentee ballots.
In support of their motion, the contestants attached certain documents, along with the deposition of the Town’s clerk In her deposition, the Town’s clerk statec that she had been clerk of the Town of Cedar Bluff for two years and nine months and that she had received training from the Alabama League of Municipalities regarding voting procedures, including absentee-ballot procedures. She testified that a voter requesting an absentee ballot could come to her office and pick up an absentee-ballot application. She indicated that it was her understanding that, although the application must be signed by the voter, anyone could pick up the application and deliver it to the voter. The clerk testified that she checks the registrar’s list to see if the person on whose behalf an absentee ballot is being requested is a registered voter, and, if so, she provides the voter an absentee ballot and an envelope in which to seal the ballot. She also provides the voter with a second envelope in which to return the sealed ballot to the clerk’s office. The ballot has to be witnessed or certified. The ballot must then be hand-delivered to the clerk or returned to the clerk’s office by mail. According to the Town’s clerk, the absentee ballots are numbered and a list of the absentee voters is posted in the town hall.
Regarding the absentee ballots for the August 26, 2008, general election, the Town’s clerk explained as follows:
“Q: Is there anything in your blue book, in your procedure book, that speaks to this particular method of getting the ballot out?
[[Image here]]
“A: At the time I did it, I thought, yes, sir.
“Q: You have subsequently discovered that there is another procedure—
“A: Yes, sir.
“Q: —other than the one you followed?
*733 “A: At the time I did it, I went by this paragraph. It says, ‘Upon receipt of the application for an absentee ballot, if the applicant’s name appears on the list of qualified voters in the election to be held or, if the voter makes an affidavit for a provisional ballot, the absentee election manager shall furnish the absentee ballot to the applicant by forwarding it by U.S. mail to the applicant’s or voter’s residence or, upon written request of the voter, the address where the voter regularly receives mail or by handing the absentee ballot to the voter in person or, in the case of an emergency voting, his or her designee in person.’ At the time, a lot of these people are elderly, shut-in people.
“Q: And you know them?
“A: No, sir, I do not. But I’m new in Cedar Bluff, and these people that picked up these are, I guess, you would say, lifelong residents of Cedar Bluff. They knew the people, and I believed them, that they were elderly. For some reason or another, they weren’t able to go to the polls.
“And the his or her designee part, I let them take the ballots out, and I wasn’t aware that I was doing anything that I wasn’t supposed to do. I let them take them, and I understood that — The paragraph above that says that they must come to me by U.S. mail. I told them they had to be mailed back to me. They took them out. The people voted whatever. They mailed them back to me.
“This went on — Well, absentee ballots started going, I guess, about the 22nd day of July, and we could receive them — the last day for absentee ballots was like August 22.
“During that four-week period, I happened to be on the phone with the League of Municipalities, one of the attorneys. We were talking about some of the absentee ballots because I talk to them 15 times a day sometimes because I am not well versed in elections.
“And I read this paragraph and was talking to one of the attorneys, and I said something about what I had done. And he said, ‘DeLana, tell me that again.’ And I did. He said, ‘That’s not right.’ And I said, ‘What’s not right?’ He said, Tou’re supposed to be mailing these ballots out.’ And I said, ‘Tracy, then I’ve done them wrong. What am I supposed to do?’ He said, ‘Well, it’s done.’
“I got off the phone, and I went and told my mayor what I did. I told her what he said, that it’s done. Until then, no one even knew that I had done anything wrong. I’m the one that told them I did it wrong.”
The clerk testified that she simply mistakenly gave the absentee ballots to persons other than the voters who intended to vote by absentee ballot.
On October 17, 2008, Smith filed a response to the contestants’ summary-judgment motion; on that date he also filed a summary-judgment motion, arguing that no grounds exist to set aside the absentee ballots. Smith argued that, if the manner of delivering the ballots to the absentee voters was improper, the mere negligence of the Town’s clerk should not disenfranchise the voters who cast those absentee ballots. Smith went on to address the contestants’ allegations in their complaint that the absentee ballots should be set aside on other grounds. Smith cited portions of the clerk’s testimony that there was no one on the list of absentee voters who was not registered to vote; that there was no one on the list of absentee voters who voted in the wrong district; that there was no one on the list who was not *734 a resident of the Town of Cedar Bluff; that there was no on the list who had been convicted of a crime involving moral turpitude, which would prohibit that person from being eligible to vote; and that no votes cast in the absentee box were illegal because of insufficient or improper witnesses. In addition, Smith noted, there were no votes that were not witnessed or notarized; there was no one on the list who had not lived in the Town of Cedar Bluff long enough to participate in this general election; there was no one on the list who was incapable of voting because of mental disease or defect; there was no one on the list who had given a fraudulent, fictitious, or improper address; on none of the applications for the ballots counted was there a failure of the voter to indicate a reason for voting absentee; and there were no votes counted that had improper voter identification. Smith also argued that the circuit court lacked subject-matter jurisdiction over the contest based on § 11-46-69 because no one had been “declared elected” and that the contest was due to be dismissed as time-barred because service of process had been insufficient. Sprouse and Sanders both filed responses to the contestants’ summary-judgment motion.
At a hearing on the summary-judgment motions, the parties agreed to waive the 10-day notice requirement for summary-judgment hearings set out in Rule 56, Ala. R. Civ. P. They also agreed that certain arguments were not waived if the circuit court determined at that hearing that the absentee ballots had not been improperly delivered.
On October 27, 2008, the circuit court entered an order declaring that there had been no fraud by the Town’s clerk in allowing the absentee ballots to be picked up by various individuals who were not the actual absentee voters but that the clerk had been negligent and this negligence gave the court no choice but to throw out the absentee ballots that had been improperly delivered. The court declared that once the improperly delivered absentee ballots were subtracted from the vote total, there would be a runoff election in the mayor’s race between Wallace and Sprouse, Burkhalter was the winner of the district-one position on the council, and McWhorter was the winner of the district-two position. The court directed all parties to indicate whether they agreed with the effect on the election results of the court’s determination in throwing out the improperly delivered absentee ballots.
Both sides agreed that the consequence of not counting the improperly delivered absentee ballots would result in runoff election in the mayor’s race between Wallace and Sprouse and that Burkhalter was the winner of the district-one council position and McWhorter was the winner of the district-two council position. On November 3, 2008, the circuit court entered an order declaring its October 27, 2008, order a final judgment. Smith is the only defendant who appealed.

Standard of Review

“ ‘ “This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. *735 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).” ’ ”
Gooden v. City of Talladega, 966 So.2d 232, 235 (Ala.2007) (quoting Prince v. Poole, 935 So.2d 431, 442 (Ala.2006)).

Discussion

Smith argues, among other things, that the circuit court lacked subject-matter jurisdiction over the election contest because, he argues, no one had been “declared elected” for purposes of § 11-46-69, Ala.Code 1975, when the contestants filed their election contest and that only the need for a runoff election had been declared. He argues that § 17-16-44, Ala. Code 1975, expressly prohibits the courts from hearing an election contest unless permitted to do so by statute, and, he says, the language of § 11—46-69 is clear and unambiguous. Smith argues that because the district-one race resulted in a runoff, no candidate had been declared elected to that office and, therefore, the circuit court did not have jurisdiction over the election contest. We agree.
Section 11 — 46-69 provides:
“(a) The election of any person declared elected to any office of a city or town may be contested by any person who was at the time of the election a qualified elector of such city or town for any of the following causes:
“(1) Misconduct, fraud, or corruption on the part of any election official, any marker, the municipal governing body, or any other person;
“(2) The person whose election to office is contested was not eligible thereto at the time of such election;
“(3) Illegal votes;
“(4) The rejection of legal votes; or
“(5) Offers to bribe, bribery, intimidation, or other misconduct calculated to prevent a fair, free, and full exercise of the elective franchise.
“(b) Any contest of such an election must be commenced within five days after the result of the election is declared. Such contest shall be instituted in the manner prescribed by Section 17-15-29 and, except as otherwise provided in this article, all proceedings relative to contests of elections to municipal offices shall be governed by the provisions of Articles 2 and 3, Chapter 15, Title 17 of this Code, insofar as they are applicable.” [5]
(Emphasis added.)
It is well settled that the legislature, by enacting § 17-16-44, has restricted the jurisdiction of the circuit courts in regard to elections. “This Court has been unequivocal in stating that elections normally do not fall within the scope of judicial review.” Sears v. Carson, 551 So.2d 1054, 1056 (1989). “We note again, as we have done on previous occasions, that a court does not have jurisdiction to interfere in an election result unless a statute *736 authorizes it to do so. The Legislature has made this abundantly clear. See § 17-5-6 [now § 17-16-44].” Etheridge v. State ex rel. Olson, 730 So.2d 1179, 1182 (Ala.1999).
The contest of municipal general elections is governed by Chapter 46 of Title 11, Ala.Code 1975. Section 11-46-69 provides that the election of any person “declared elected” to a municipal office may be contested by any person who was a qualified elector of the municipality at the time of the election. On September 2, 2008, when the results of the general election for the Town of Cedar Bluff were declared, a runoff election was ordered for the district-one place on the council. Section 11-46-69 does not provide for an election contest to challenge the results of an initial municipal election for an office when there are more than two candidates for that office and no candidate receives a majority of the votes cast. See § 11-46-55(d). Only the election of a “person declared elected” may be contested under § 11-46-69; therefore, under § 11-46-69 a runoff election must first be held so that a person can be “declared elected” before a contest will lie, with the anomalous result that a potentially unnecessary runoff will be held. However, notwithstanding 'the fact that a contest challenging an initial election at which no one is “declared elected” to a particular office must wait until a candidate is “declared elected” after a runoff election, an election contest cannot be brought in any court unless allowed by statute. The statute here does not allow the challenge. “A judgment of a court without jurisdiction is void. An appeal will not lie from a void judgment.” Harvey v. City of Oneonta, 715 So.2d 779, 781 (Ala.1998). The circuit court did not have jurisdiction to entertain an election contest from a municipal general election in a mul-ti-candidate field when no candidate secured a majority of the votes cast; accordingly, the circuit court’s judgment is void, and the appeal is dismissed. Because we conclude that the circuit court lacked subject-matter jurisdiction, we pretermit discussion of the other issues Smith raises in his appeal.
APPEAL DISMISSED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, MURDOCK, and SHAW, JJ., concur.

. The vote totals certified in the mayoral election were as follows: Sprouse 165, Lay 140, Wallace 124, and Reese 42.

. The vote totals certified in the election for the district-one council position were as follows: Burkhalter 61, Smith 36, and Timothy Miller 30.

. The vote totals certified in the election for the district-two council position were as follows: Sanders 46, and McWhorter 34.

.If the disputed absentee ballots are not counted, Wallace, and not Lay, would have been in the mayoral runoff election; Burkhal-ter would have been elected to the council position for district one without a runoff; and McWhorter would have been elected to the council position for district two instead of Sanders.

. Section 17-15-29 is now codified at § 17-16-56. Articles 2 and 3, Chapter 15 of Title 17, are now codified at §§ 17-16-47 through -62 and §§ 17-16-63 through -76, respectively.