MOORE, Chief Justice
(dissenting).
For the reasons stated below I dissent from this Court’s decision to affirm without opinion the judgment of the Montgomery Circuit Court granting the motion of the Secretary of State to dismiss this action.
Hugh Mclnnish and Virgil H. Goode, Jr. (hereinafter “the plaintiffs”), appeal from an order of the Montgomery Circuit Court dismissing their complaint against the Alabama Secretary of State. The complaint alleged that the Secretary of State failed to perform a constitutional duty to verify the eligibility of all presidential candidates appearing on the ballot in the 2012 general election. Mclnnish is a citizen of Alabama, *1055 a qualified elector, and a member of the Alabama Republican Executive Committee. Goode qualified as an independent candidate for President of the United States in the 2012 Alabama general election. Jim Bennett is currently the Alabama Secretary of State.[5]

I. Facts and Procedural History

On October 11, 2012, the plaintiffs filed a verified complaint in the Montgomery Circuit Court seeking a writ of mandamus ordering the Alabama Secretary of State to verify the eligibility of candidates for the office of President of the United States before placing their names on the 2012 general-election ballot.[6] The plaintiffs specifically petitioned the circuit court to order the Secretary of State to demand as a precondition to placing the names of presidential candidates on the ballot that “a certified copy of their bona fide birth certificate be delivered to her direct from the government official who is in charge of the records depository in which it is stored.” The plaintiffs also sought injunc-tive relief to prevent the placing of the names of candidates for President on the ballot “until their eligibility has been conclusively determined.” Finally, the plaintiffs requested the circuit court to remove from the ballot the names of candidates whose eligibility could not be verified. The plaintiffs attached three affidavits, two articles, and a copy of an e-mail to their complaint.
On October 15, 2012, three weeks before the November 6 general election, the plaintiffs moved for a summary judgment, arguing that the Secretary of State had a duty to enforce the natural-born-citizen requirement of the United States Constitution in determining whether candidates for President of the United States were eligible. for placement on the 2012 Alabama general-election ballot. See U.S. Const. Art. II, § 1, cl. 4 (“No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President... ,”).[7] Although the plaintiffs attached no affidavits or other supporting evidentiary material to their motion for a summary judgment, the motion did cite to the verified complaint, which states:
“On'February 2, 2012 Plaintiff Mclnnish, together with his attorney and others, visited the Office of the Secretary of State, at which the Hon. Emily Thompson, Deputy Secretary of State, speaking in the absence of and for the Secretary of State, stated that her office would not investigate the legitimacy of any candidate, thus violating her duties under the U.S. and Alabama Constitutions.”
(Emphasis added.)[8]
On October 18, 2012, the Secretary of State answered the motion for a summary *1056 judgment and simultaneously moved to dismiss the case, arguing that the duty to investigate the qualifications of presidential candidates lies with Congress and not the office of the Secretary of State. She also argued that the plaintiffs had failed to join necessary parties, namely the presidential candidates and their electors, and that the complaint and motion were untimely because many ballots had already been printed and absentee voting had begun. On October 24, 2012, the plaintiffs filed an opposition to the motion to dismiss, reiterating their request that the circuit court “order the Secretary of State to verify the eligibility of all presidential candidates for the 2012 Alabama General Election Ballot.”
In the remaining two weeks before the general election, the circuit court did not rule on the pending motions. On November 10, 2012, four days after the election, the plaintiffs filed a document entitled “Praecipe,”[9] noting that President Obama had been reelected and asking that the pending motions be decided “well before the Alabama electors vote on December 17, 2012.” On November 20, 2012, the Secretary of State filed a “renewed” motion to dismiss, arguing that the occurrence of the election rendered the case moot and that under Alabama law the circuit court lacked subject-matter jurisdiction over a challenge to a presidential election. The plaintiffs opposed the motion, arguing the “capable of repetition, yet evading review” exception to mootness. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The plaintiffs also requested that the circuit court order the Secretary of State to decertify the Alabama votes for any 2012 presidential candidate who did not provide an authenticated birth certificate. On December 6, 2012, the circuit court heard argument on the pending motions. The same day the court issued a “Final Order,” which stated in its entirety: “This cause having come before the Court on Defendant’s Motion To Dismiss, the same having been considered, it is hereby ORDERED, ADJUDGED AND DECREED said Motion is GRANTED.”
The plaintiffs timely filed a notice of appeal to this Court on January 17, 2013.

II. Standard of Review

“Where a [Rule] 12(b)(6)[, Ala. R. Civ. P.,] motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Karagan v. City of Mobile, 420 So.2d 57 (Ala.1982).”
Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985). “[I]f under a provable set of facts, upon any cognizable theory of law, a complaint states a claim upon which relief could be granted, the complaint should not be dismissed.” Id.
*1057 In this case, the plaintiffs seek a writ of mandamus as well as other relief.
“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).

III. Analysis

At the outset I note that the plaintiffs did not ask the circuit court to determine whether Barack Obama or any other presidential candidate on the 2012 ballot met the “natural-born-citizen” requirement of Art. II, § 1, cl. 4, of the United States Constitution. Instead, the plaintiffs petitioned the circuit court to issue a writ of mandamus ordering the Alabama Secretary of State to authenticate the eligibility of each candidate for President by requiring delivery to her of a certified copy of each candidate’s birth certificate from “the records depository in which it is stored.” The plaintiffs Riso requested injunctive relief preventing the placement of the name of any presidential candidate on the gener-' al-election ballot until such evidence of eligibility had been supplied and the removal from the ballot of the names of presidential candidates “whose eligibility cannot be verified.” In a post-election brief to the circuit court, the plaintiffs also requested that the circuit court order the Secretary of State to decertify the votes of any candidate who did not provide an authenticated birth certificate.
A Threshold Issues
I first address four preliminary issues before turning to the merits of this case: subject-matter jurisdiction, standing, timeliness, and mootness.

1. Subject-Matter Jurisdiction

“[The circuit court] shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers.” Art. VI, § 142(b), Ala. Const.1901. See also § 6-6-640, Ala.Code 1975 (“All applications for mandamus ... shall be commenced by a petition, verified by affidavit... .”). This Court has jurisdiction to hear appeals from the circuit courts concerning extraordinary writs. Art. VI, § 140(b), Ala. Const.1901. See Rice v. Chapman, 51 So.3d 281 (Ala.2010) (hearing an appeal from a denial by the Montgomery Circuit Court of a petition for a writ of mandamus that sought an order directing the Secretary of State to exclude a candidate from the primary-election ballot); Alabama Republican Party v. McGinley, 893 So.2d 337 (Ala.2004) (reversing the issuance of a writ of mandamus by the Montgomery Circuit Court that ordered the Republican Party to place a candidate on the primary ballot and ordered the Secretary of State to certify the votes cast for that candidate).

2. Standing

Goode, as the Constitution Party candidate for President on the 2012 Alabama general-election ballot, had standing to challenge the presence on the ballot of other candidates for the same office. See Hollander v. McCain, 566 F.Supp.2d 63, 68 (D.N.H.2008) (noting that a candidate “has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate’s ... own chances of prevailing in the election”); Drake v. Obama, 664 F.3d 774, 782-83 (9th Cir.2011) (recognizing the doctrine of “competitive standing” as a basis for challenging the eligibility of a ballot rival). The plaintiffs filed their complaint before the date of the 2012 general election, “[jurisdiction of the Court *1058 depends upon the state of things at the time of the action brought, and ... after vesting, it cannot be ousted by subsequent events.” Mullan v. Torrance, 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824). By contrast, the United States Court of Appeals for the Ninth Circuit denied competitive standing to candidates who did not file their complaint until after President Barack Obama was sworn in to office. Drake, 664 F.3d at 784 (holding that, once President Obama was sworn in, “[plaintiffs’ competitive interest in running against a qualified candidate had lapsed”).
Therefore, Goode, a presidential candidate on the .2012 general-election ballot who filed his complaint before the election, has standing to pursue this case. Because Goode has standing and his coplaintiff, Mclnnish, alleges the same claims as Goode, I need not address whether Mclnnish also has standing. See Watt v. Energy Action Educ. Found., 454 U.S. 151, 160, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981) (“Because we find [one plaintiff] has standing, we do not consider the standing of the other plaintiffs.”); Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 264 & n. 9, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (noting that “[bjecause of. the presence of [one] plaintiff [who has demonstrated standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit”); Buckley v. Valeo, 424 U.S. 1, 12, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (holding that case was justiciable when at “least some of the appellants have a sufficient ‘personal stake’ ” in its adjudication).

3. Timeliness

“ ‘Objections relating to nominations must be timely made. It is too late to make them after the nominee’s name has been placed on the ballot and he has been elected to office....’” State ex rel. Norrell v. Key, 276 Ala. 524, 525-26, 165 So.2d 76, 77 (1964) (quoting 29 C.J.S. Elections § 141). The plaintiffs filed their complaint on October 11, 2012, 26 days before the November 6 general election. The Republican and Democratic Party candidates for President were nominated at their national conventions on August 29, 2012, and September 5, 2012, respectively. Allowing time for the parties to certify their candidates and electors to the Secretary of State pursuant to § 17-14-31, Ala.Code 1975, the plaintiffs filed suit approximately one month after the candidates were known.
Laches, an affirmative defense, Rule 8(c), Ala. R. Civ. P., which the Secretary of State raised in her pre-answer motion to dismiss, “ ‘is inexcusable delay in asserting a right ... causing prejudice to an adverse party....’” Dunn v. Ponceler, 235 Ala. 269, 276, 178 So. 40, 45 (1937) (quoting 21 Corpus Juris, pp. 210-11). In his dissent in Roper v. Rhodes, 988 So.2d 471, 485 (2008), Justice Murdock noted that the challenge to ballot certification at issue in that case was brought over two months after the candidate’s nomination and only six days before the general election: “This delay, coupled with the apparent prejudice to the parties and to the orderly conduct of the general election itself that would result if the primary election were to be undone at such a late date, compels a ruling ... on the ground of laches.” Other courts have rejected ballot-eligibility challenges on timeliness grounds. See, e.g., Fulani v. Hogsett, 917 F.2d 1028 (7th Cir.1990) (denying relief on laches ground when plaintiff filed complaint three weeks before November general election but irregularity had occurred in early August); Liddy v. Lamone, 398 Md. 233, 919 A.2d 1276 (2007) (denying on laches ground eligibility challenge brought 18 days before general election when candidate had been certified for the ballot over 4 months before the general election).
*1059 In the cases cited above decided on the doctrine of laches, the ballot-access challenge had been brought 2 to 4 months after certification of the nomination and from 6 to 21 days before the election. In this case, the plaintiffs brought their challenge only 5 weeks after selection of the presidential nominees and 26 days before the election. Because of the brevity of the two-month interval between the national-convention nominations and the November general election, plaintiffs’ filing of their action midway through that period did not constitute “inexcusable delay.”

U. Mootness

The Secretary of State argues that the holding of the election renders this case moot. The plaintiffs argue an exception to mootness — that the certification of ineligible candidates is a matter “capable of repetition, yet evading review.” They have preserved this argument, presenting it both in their opposition to the Secretary of State’s renewed motion to dismiss[10] and also during the hearing before the circuit court on December 6, 2012.[11] In their appellate brief they ask this Court not only to reverse the judgment of the circuit court on the issue of requiring birth certificates from the presidential candidates whose names appeared on the 2012 general-election ballot, but also to direct the circuit court to order that the Secretary of State “do the same for all candidates in future presidential elections.”
In a case similar to this one, the United States Court of Appeals for the Third Circuit held that the shortness of the election cycle qualifies presidential-candidate-eligibility challenges for the “capable of repetition, yet evading review” exception to mootness. The Third Circuit Court of Appeals reasoned:
“Although the defendants argue that [plaintiffs challenge to President Obama’s eligibility] is moot, because the election is over, we consider the issue because ‘[t]his controversy, like most election cases, fits squarely within the “capable of repetition yet evading review” exception to the mootness doctrine.’ Merle v. United States, 351 F.3d 92, 94 (3d Cir.2003).”
Berg v. Obama, 586 F.3d 234, 239 n. 5 (3d Cir.2009). This Court has ruled similarly. See Allen v. Bennett, 823 So.2d 679, 682 (Ala.2001) (“[BJecause the outcome of this case could impact future elections, we hold that the interpretation of [the constitutional provision at issue in] this case — and hence this appeal — is not moot.”);[12] Griggs v. Bennett, 710 So.2d 411, 412 n. 4 (Ala.1998) (same).
The United States Supreme Court, rejecting a mootness challenge to a ballot-access law affecting presidential electors, has stated:
“But while the 1968 election is over, the burden ... allowed to be placed on the nomination of candidates for statewide offices remains and controls future elec *1060 tions, as long as Illinois maintains her present system as she has done since 1935. The problem is therefore ‘capable of repetition, yet evading review,’ Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515 [ (1911) ].”
Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). See Rice v. Sinkfield, 732 So.2d 993, 994 n. 1 (Ala. 1998) (citing Ogilvie as authority for the “capable of repetition, yet evading review” exception to mootness). See also Morse v. Republican Party of Virginia, 517 U.S. 186, 235 n. 48, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996) (“Like other cases challenging electoral practices, therefore, this controversy is not moot because it is ‘capable of repetition, yet evading review.’ ”); Swanson v. Worley, 490 F.3d 894, 903 n. 10 (11th Cir.2007) (“Although the 2002 election cycle has passed, it is well settled that ballot access challenges fall under the ‘capable of repetition, yet evading review’ exception to the mootness doctrine.”).[13]
Ordinarily the “capable of repetition, yet evading review” exception to mootness requires the satisfaction of two conditions: “ ‘[T]he challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and there was a reasonable expectation that the same complaining party would be subjected to the same action again.’ ” Albert P. Brewer Dev. Ctr. v. Brown, 782 So.2d 770, 772 n. 1 (Ala.2000) (quoting Charles Alan Wright, Law of Federal Courts § 12 (5th ed.1994)). In this case, as in most election cases, the first prong is easily satisfied. The two-month period between the national-presidential-nominating conventions and the subsequent general election is too short to fully litigate the Secretary of State’s duty to investigate presidential candidates under the qualifications clause. This Court has stated:
“The capable-of-repetition-but-evading-review exception has been applied in contexts that generally involve a significant issue that cannot be addressed by a reviewing court because of some intervening factual circumstance, most often that the issue will be resolved by the passage of a relatively brief period of time. See, e.g., ... Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct.-1493, 23 L.Ed.2d 1 (1969) (involving challenges to election procedures after the completion of the election); and [State ex rel] Kemells [v. Ezell, 291 Ala. 440, 444, 282 So.2d 266, 270 (1973) ], supra (same).”
McCoo v. State, 921 So.2d 450, 458 (Ala. 2005). See also Lawrence v. Blackwell, 430 F.3d 368, 371 (6th Cir.2005) (“Challenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election.”); Van Bergen v. State of Minnesota, 59 F.3d 1541, 1547 (8th Cir.1995) (“Elections, including the preelection campaign period, are almost invariably of too short a duration in which to complete litigation and, of course, recur at regular intervals.”).
In the context of election cases, the second-prong requirement that “the same complaining party would be subjected to the same action again” is relaxed. The case is customarily not moot if the challenged action could affect any candidate in *1061 the future, not just the one presently before the court.
“The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections. This is, therefore, a case where the controversy is ‘capable of repetition, yet evading review.’ ”
Storer v. Brown, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (emphasis added). Similarly, the United States Supreme Court, without inquiring as to future plans of the respondents to run for office, held that a challenge to ballot-access requirements was not rendered moot by the occurrence of the election. Mandel v. Bradley, 432 U.S. 173, 175 n. 1, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977). See also Anderson v. Celebrezze, 460 U.S. 780, 784 n. 3, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (same); Brown v. Chote, 411 U.S. 452, 457 n. 4, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973) (same); North Carolina Right to Life Comm. Fund v. Leake, 524 F.3d 427, 435 (4th Cir.2008). (“[W]e reject, as other circuits have, the argument that an ex-candidate’s claims may be ‘capable of repetition, yet evading review’ only if the ex-eandi-date specifically alleges an intent to run again in a future election.”).
United States Supreme Court Justice Antonin Scalia summarized this jurisprudence in a case in which he disagreed with the majority’s finding that the issue was not moot. Some of the Supreme Court’s election-law decisions, he stated,
“differ from the body of our mootness jurisprudence not in accepting less than a probability that the issue will recur, in a manner evading review, between the same parties; but in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur between the defendant and the other members of the public at large without ever reaching us.”
Honig v. Doe, 484 U.S. 305, 335-36, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (Scalia, J., dissenting).
In Moore v. Ogilvie, 394 U.S. at 816 (quoted above), the Supreme Court rejected a mootness challenge to an election case because “candidates for statewide offices” not before the Court might encounter the same ballot obstacle in the future. Similarly, this Court, relying on Ogilvie, has stated:
“[Tjhis exception for cases ‘capable of repetition, yet evading review’ has been specifically applied by the United States Supreme Court to the elections context in Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), where a challenged nominating procedure was dealt with on the merits even after the election because of the likelihood of its being used in future elections.
“This exception is properly applicable to the case at bar. The short 30-45 day time period between filing and election, coupled with the possibility of future elections in other counties, convinces us that if the rights of appellant, and those similarly situated, are to be afforded the protection they deserve, the occurrence of the election should not be permitted to effectively deny all review by this court. The cause, therefore, is not moot.”
State ex rel. Kemells v. Ezell, 291 Ala. 440, 444, 282 So.2d 266, 270 (1973) (emphasis added).[14]
*1062 Under both federal and state precedent, the plaintiffs’ claim that the Secretary of State has a legal duty under the natural-born-citizen clause of the United States Constitution to verify the eligibility of candidates for the office of President of the United States before placing their names on the general-election ballot has not been mooted by the occurrence of the 2012 election. I now turn to the merits.

B. State-Law Issues

Before addressing the duty of the Secretary of State under the presidential-qualifications clause, I first identify the extent to which state law obligates her to determine whether presidential candidates are legally qualified for placement on the general-election ballot. I then examine the extent to which Alabama law provides state courts with jurisdiction to hear challenges to candidate qualifications.

1. Duty of the Secretary of State to Investigate the Eligibility of Presidential Candidates

Alabama law mandates that the Secretary of State certify presidential candidates for inclusion on the ballot in two circumstances: (1) nomination by a national convention or (2) nomination by a petition signed by 5,000 qualified voters.
“When presidential electors are to be chosen, the Secretary of State of Alabama shall certify to the judges of probate of the several counties the names of all candidates for President and Vice President who are nominated by any national convention or other like assembly of any political party or by written petition signed by at least 5,000 qualified voters of this state.”
§ 17-14-31(a), Ala.Code 1975 (emphasis added). This statute by itself does not require the Secretary of State to question the eligibility of candidates who fulfill either method of qualifyingfor certification.
However, § 17-9-3(a), Ala.Code 1975, which also provides for placing candidates on the general-election ballot, contains a proviso that such candidates be “otherwise qualified for the office they seek.” This statute in isolation applies only to candidates for state office. See § 17 — 9—3(a)(1)— (3).[15] Another statute, however, extends the reach of § 17-9-3 to presidential primaries. Section 17-13-101, Ala.Code 1975, states: “The provisions of Section 17-9-3 ... shall apply to presidential preference primaries ... unless clearly inconsistent herewith or inappropriate for the conduct of a presidential preference primary.” Thus, § 17-13-101 renders § 17-9-3, including its “otherwise qualified” language, applicable to presidential-preference primaries. Accordingly, candidates who qualify for placement on the ballot in a presidential-preference primary, see § 17-13-302, Ala.Code 1975, are “entitled to have their names printed on the appropriate ballot for the general election, provided they are otherwise qualified for the office they seek.” § 17-9-3(a).
To qualify for placement on the general-election ballot as a candidate for President after participating in the presidential-preference primary, a candidate must be nominated by the national convention of his or her party. See § 17-14-31, Ala.Code 1975. Thus, by the combined effect of §§ 17-9-3(a) and 17-13-101, the “otherwise qualified” proviso of § 17-9-3(a) applies to presidential nominees who have appeared on the ballot in the presidential-preference primary. Under Alabama law, therefore, the Secretary of State, as the *1063 chief elections official, has a legal duty to determine that presidential-convention nominees who have run in the presidential primary are duly “qualified for the office they seek” before placing their names on the general-election ballot.

2. Jurisdiction of Alabama Courts over Plaintiffs’ Request for Relief

“The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law.” Art. VI, § 142(b), Ala. Const.1901. One such exception is found in § 17-16-44, Ala.Code 1975: “No jurisdiction exists in or shall be exercised by any judge or court to entertain any proceeding for ascertaining the legality, conduct, or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute_” (Emphasis added.) This statute appears in Chapter 16, Article 8, of the Election Code. Chapter 16 is entitled “Post Election Procedures.” Article 3 is entitled “Election Contests.” Its location in the Code indicates that the jurisdictional restrictions of § 17-16-44 apply only in post-election contests.
Section 17-16-44 refers to “any proceeding for ascertaining the legality, conduct, or results of any election.” Certainly the “results” of an election may not be ascertained prior to election day. But ascertaining the “legality” or “conduct” of an election could potentially apply before the election as well as after. Construing § 17-16-44, this Court has stated: “ ‘Construing this statute as a whole, it appears, broadly speaking, to cover cases inquiring into the validity of elections theretofore held — a proceeding in the nature of a contest of an election, whether the legality, conduct or results of the election be the point of attack.’ ” King v. Campbell, 988 So.2d 969, 977 (Ala.2007) (quoting Dennis v. Prather, 212 Ala. 449, 452, 103 So. 59, 62 (1925), which construes a predecessor statute to § 17-16-44).
An election contest can occur only after an election has taken place. See Sears v. McCrory, 43 So.3d 1211, 1215 n. 4 (Ala. 2009) (stating that “an election contest cannot be filed .until after a candidate is ‘declared elected’ ” (citing Smith v. Burk-halter, 28 So.3d 730, 735 (Ala.2009))). The plaintiffs’ pre-election request for an injunction preventing the placement of constitutionally unqualified presidential candidates on the ballot (or ordering their removal) thus does not implicate the jurisdiction-stripping statute, which applies only to post-election actions. However, § 17-16-44 does interdict the plaintiffs’ post-election request for relief. No Alabama statute “specially and specifically” provides any state court with jurisdiction to entertain a contest of a federal election. See § 17-16-40, Ala.Code 1975 (providing for an eligibility challenge as part of a post-election contest of enumerated state offices).[16] In their post-election “prae-cipe” the plaintiffs requested that the circuit court order the Secretary of State to decertify the Alabama votes for any 2012 presidential candidate who did not provide an authenticated birth certificate. Under § 17-16-44 no jurisdiction exists in any Alabama court to decertify the votes of a federal election.

C. Federalr-Law Questions

The Secretary of State has a duty under state law to examine the qualifications of *1064 national-convention nominees who ran in the presidential primary before placing their names on the general-election ballot. The jurisdiction-stripping statute forbids inquiry into the eligibility of presidential candidates once an election has occurred, but it does not preclude such an inquiry before the election.
I now address whether the Secretary of State as part of her limited state-law duty to qualify certain presidential candidates for the ballot must take cognizance of the presidential-qualifications clause of the United States Constitution and, in particular, the natural-born-citizen requirement. I also address whether, regardless of the requirements or limitations of state law, the Secretary of State has a duty arising directly under the United States Constitution to qualify all presidential candidates under the presidential-qualifications clause before printing their names on the general-election ballot. “The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.” Free v. Bland, 369 U.S. 668, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). Because the duty of state executive officers to enforce the qualifications clause may differ depending on whether a challenge is brought before the identity of the President-elect is determined or after-wards, I treat these two scenarios separately.[17]

1. Challenges to the Qualifications of the President-Elect

When federal courts discern a “textually demonstrable constitutional commitment of [an] issue to a coordinate political department,” Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), they ordinarily consider the matter a nonjusticiable political question and defer to the designated branch under the separation-of-powers doctrine. The Constitution assigns Congress the responsibility to resolve challenges to the qualifications of a President-elect or a sitting President. Article 2, § 1, of the United States Constitution establishes the electoral college. The Twelfth Amendment designates how electors certify their votes for President and Vice President to the president of the Senate, how those electoral votes are counted, and how a President is chosen if no candidate has a majority. The Twentieth Amendment in turn details how the President is chosen if the President-elect dies or “shall have failed to qualify.” The Twenty-Fifth Amendment provides for a transfer of power in the event the President “is unable to discharge the powers and duties of his office.” Finally, §§ 2 and 3 of Article I provide for impeachment and removal of the President.
*1065 These provisions, taken together, lodge with Congress the power to confirm the election of a President and to remove a President from office. Additionally, 8 U.S.C. § 15 provides detailed instructions for the counting of electoral votes, including a mechanism to hear and resolve objections. A federal district court has stated:
“It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process .... The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates.”
Robinson v. Bowen, 567 F.Supp.2d 1144, 1147 (N.D.Cal.2008).[18] Once the states have cast their electoral votes, “the issue of the President’s qualifications and his removal from office are textually committed to the legislative branch and not the judicial branch.” Grinols v. Electoral Coll, (No. 2:12-CV-02997-MCE-DAD, May 23, 2013) (E.D.Cal.2013) (not reported in F.Supp.2d). See also Rhodes v. MacDonald, 670 F.Supp.2d 1363, 1377 (M.D.Ga.2009) (noting that “if the President were elected to the office by knowingly and fraudulently concealing evidence of his constitutional disqualification, then [the] mechanism [of impeachment] exists for removing him from office”).
In State v. Albritton, 251 Ala. 422, 37 So.2d 640 (1948), the State of Alabama brought suit seeking to restrain Democratic Party electors from refusing to vote for Harry Truman were he to be the party’s presidential nominee. This Court refused to intervene in what it considered a “political matter,” citing among other authority the predecessor to § 17-16-44 and pointing the litigants to a federal remedy: “Section 17, Title 3, U.S.C.A. [currently 3 U.S.C. § 15], provides a complete remedy for contesting irregularity of casting votes by presidential electors.” 251 Ala. at 425, 37 So.2d at 643. Compare Hutchinson v. Miller, 797 F.2d 1279, 1284 (4th Cir.1986) (“Had the framers wished the federal judiciary to umpire election contests, they could have so provided. Instead, they reposed primary trust in popular representatives and in political correctives.”).
Because Congress completely occupies the field of determining the qualifications of a President-elect or a sitting President to hold office, the political-question doctrine ousts federal courts from having jurisdiction over those particular questions.[19] State courts should not rush in where federal courts decline to tread. See Strunk v. New York State Bd. of Elections, 35 Misc.3d 1208(A), 950 N.Y.S.2d 722 (table) (Sup.Ct.2012) (unreported disposition) (“Federal courts have no role in this process. Plainly, state courts have no role.”). The doctrine of field preemption requires that states not regulate in an area exelu- *1066 sively occupied by Congress. Preemption occurs “where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the states to supplement federal law....” Louisiana Pub. Serv. Comm’n v. FCC, 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (quoted in General Motors Corp. v. Kilgore, 853 So.2d 171, 174 (Ala. 2002)). Field preemption has been found when the need exists for uniform federal treatment of a subject. See Davis v. Red-stone Fed. Credit Union, 401 So.2d 49, 51 (Ala.Civ.App.1979).
Under the political-question and preemption doctrines, Alabama state courts are without power to regulate the conduct of a presidential election after the President-elect has been selected. Likewise, the Secretary of State also lacks authority to decertify Alabama’s electoral votes for .the President-elect.

2. Challenges to the Qualifications of Presidential Candidates

A state law that required birth certificates from presidential candidates as a precondition to placement on the ballot would likely pass muster under federal preemption law. Such a law would not conflict with the Constitution, but would rather harmonize with the natural-born-citizen clause. New Hampshire, for example, requires an affirmation that a person is a “natural born citizen” as a condition to placing that person’s name on a presidential-election ballot. N.H.Rev.Stat. Ann. § 655:47. See also Hassan v. Colorado, 870 F.Supp.2d 1192, 1201 (D.Colo.2012), affd, 495 Fed-Appx. 947 (10th Cir.2012) (upholding a Colorado law requiring all presidential candidates to affirm that they are natural-born citizens). Although states have no power “to add qualifications to those enumerated in the Constitution,” U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 805, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995), they certainly are not limited in enforcing those stated therein.[20]

a. The Grant of Power to the States to Appoint Presidential Electors

The selection of presidential electors is an exclusive state function subject only to congressional determination of when the electors shall be selected and when they shall cast their votes.
“Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress....
“The Congress may determine the Time of choosing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States.”
U.S. Const. Art. II, § 1, els. 2 & 3 (emphasis added). “In short, the appointment and mode of appointment of electors belong exclusively to the states under the constitution of the United States.” McPherson v. Blacker, 146 U.S. 1, 35, 13 S.Ct. 3, 36 L.Ed. 869 (1892). See also Opinion of the Justices No. 87, 250 Ala. 399, 401, 34 So.2d 598, 600 (1948) (same). “Congress has never undertaken to interfere with the manner of appointing electors ... but has left these matters to the control of the states.” Fitzgerald v. Green, 134 U.S. 377, 380, 10 S.Ct. 586, 33 L.Ed. 951 (1890). The electors, called into existence by the United States Constitution, act by authority of the state in choosing a President and Vice President:
“The presidential electors exercise a federal function in balloting for President *1067 and Vice-President but they are not federal- officers or agents any more than the state elector who votes for congressmen. They act by authority of the state that in turn receives its authority from the federal constitution.”
Ray v. Blair, 343 U.S. 214, 224-25⅛ 72 S.Ct. 654, 96 L.Ed. 894 (1952). See also Burroughs v. United States, 290 U.S. 534, 545, 54 S.Ct. 287, 78 L.Ed. 484 (1934) (same); Opinion of the Justices No. 194-, 283 Ala. 341, 343, 217 So.2d 53, 55 (1968) (quoting Green, 134 U.S. at 379.) (same); U.S. Term Limits, 514 U.S. at 805 (noting that the Constitution provides “express delegations of power to the States to act with respect to federal elections”).
In contrast to the detailed provisions in the Twelfth Amendment that allocate to Congress the authority to count the electoral votes and, in the absence of a majority, to choose the President and Vice President, the Constitution grants “plenary power to the state legislatures in the matter of the appointment of electors.” McPherson, 146 U.S. at 35 (emphasis added). No constitutional division of power between the states and the federal government or between the different branches of government hinders any state from selecting its allocated portion of the members of the electoral college. State power, far from being preempted in this area, is expressly bestowed. For implementation in Alabama, see §§ 17-14-30 through -37, Ala.Code 1975 (“Elections for Presidential and Vice Presidential Electors”).
The authority of the states to select electors, however, does not extend to abrogating the qualifications clause.
“Congress is empowered to determine the time of choosing the electors and the day on which they are to give their votes, which is required to be the same day throughout the United States; but otherwise the power and jurisdiction of the state is exclusive, with the exception of the provisions as to the number of electors and the ineligibility of certain persons_” '
McPherson, 146 U.S. at 35 (emphasis added). “[T]he First Section of the Second Article of the Constitution” “does grant extensive power to the States to pass laws regulating the selection of electors.... [TJhese granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution.” Williams v. Rhodes, 393 U.S. 23, 29, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (emphasis added). See also Ray v. Blair, 343 U.S. at 227 (noting “the state’s right to appoint electors in such manner, subject to possible constitutional limitations, as it may choose” (emphasis added)); Williams v. Virginia State Bd. of Elections, 288 F.Supp. 622, 626 (E.D.Va.1968), affd mem., 393 U.S. 320, 89 S.Ct. 555, 21 L.Ed.2d 517 (1969) (“In short, the manner of appointment must itself be free of Constitutional infirmity.”).
Although the electoral college was originally established to be an independent body of judicious individuals who would exercise their discretion in the same manner as other chosen representatives, in practice the electors have been chosen by popular vote in tandem with the presidential candidates they are pledged to support.[21] Alabama law makes this practice *1068 mandatory. See § 17-14-31(c), Ala.Code 1975. Although the names of the electors are not printed on the presidential ballot, § 17-14-32, Ala.Code 1975, “[a] vote for a particular presidential candidate is counted as a vote for the slate of electors pledged to support him.” Hitson v. Baggett, 446 F.Supp. 674, 675 (M.D.Ala.1978), affd mem., 580 F.2d 1051 (5th Cir.1978). Accordingly, when the Secretary of State, pursuant to state law, authorizes the printing of names of presidential candidates on the general-election ballot, he or she is also participating in executing the state’s power under Article II of the United States Constitution to select presidential electors. This power, however, expressly granted to the States by the Constitution, must be exercised in conformity with other provisions of the Constitution, including the qualifications clause.

b. The Duty of the Secretary of State to Support the United States Constitution

The United States Constitution is the supreme law of the land. “This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land....” U.S. Const. Art. VI, cl. 2. In the immediately following clause the Constitution binds state officials to obey this mandate: “[A]ll executive and judicial Officers ... of the several states, shall be bound by Oath or Affirmation, to support this Constitution.... ” U.S. Const. Art. VI, cl. 3. The Alabama Constitution requires state officials to take a similar oath or affirmation to support the federal and state constitutions:
“All members of the legislature, and all officers, executive and judicial, before they enter upon the execution of the duties of their respective offices, shall take the following oath or affirmation:
“ T, ., solemnly swear (or affirm, as the case may be) that I will support the Constitution of the United States, and the Constitution of the State of Alabama, so long as I continue a citizen thereof; and that I will faithfully and honestly discharge the duties of the office upon which I am about to enter, to the best of my ability. So help me God.’ ”
Art. XVI, § 279, Ala. Const.1901. See also Speiser v. Randall, 357 U.S. 513, 536, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (Douglas, J., concurring) (“All public officials— state and federal — must take an oath to support the Constitution by the express command of Article VI of the Constitution.”); The Federalist No. 27, at 175 (Alexander Hamilton) (Jacob E. Cooke ed., 1961) (noting that “all officers, legislative, executive, and judicial, in each State, will be bound by the sanctity of an oath” to support the constitution as the supreme law of the land); Shuttlesworth v. Birmingham Bd. of Educ., 162 F.Supp. 372, 381 (N.D.Ala.1958) (“As executive officers of the State, the members of the defendant [Birmingham] Board [of Education] are likewise required to ‘be bound by Oath or Affirmation to support this Constitution.’ ”).
The oath to support the constitution, wrote Justice Story,
“results from the plain right of society to require some guaranty from every officer, that he will be conscientious in the discharge of his duty. Oaths have a solemn obligation upon the minds of all reflecting men, and especially upon those, who feel a deep sense of accountability to a Supreme being.”
Ill Joseph Story, Commentaries on the Constitution of the United States § 1838 (1833). Story explained the purpose for state officers to execute the oath: “The members and officers of the state governments have an essential agency in giving effect to the national constitution.... *1069 [Functions, devolving on the state authorities, render it highly important, that they should be under a solemn obligation to obey the constitution.” Id., § 1839. George Washington admonished his countrymen that “ ‘ “the constitution which at any time exists, till changed by an explicit and authentic act of the whole people, is sacredly obligatory upon all.” ’ ” State v. Manley, 441 So.2d 864, 867 (Ala.1983) (quoting In re Opinion to the Governor, 55 R.I. 56, 61, 178 A. 433, 436 (1935), quoting in turn R.I. Const. Art. I, § 1).
Under the Constitutions of the United States and of the State of Alabama, the Secretary of State, as an executive officer of the State of Alabama, has an affirmative legal duty to recognize and support the United States Constitution as the supreme law of the land.[22] The United States Constitution does not supply a detailed catalog of the specific duties encompassed by the Article VI oath of allegiance. “A constitution, to contain an accurate detail of all the subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind.” M’Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819). Nonetheless, as Chief Justice John Marshall stated for the Court in regard to the oath for judicial office:
‘Why otherwise does [the Constitution] direct the judges to take an oath to support it? This oath certainly applies, in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support!
“Why does a judge swear to discharge his duties agreeably to the constitution of the United States, if that constitution forms no rule for his government?”
Marbury v. Madison, 5 U.S. (1 Cranch) 137, 180, 2 L.Ed. 60 (1803). See also Collier v. Frierson, 24 Ala. 100, 109 (1854) (discussing the constitutional provisions for amending the state constitution and asking: “But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government, can dispense with them”).
The “last and closing clause of the Constitution” binds all executive and judicial officers of the several states “to preserve it in full force, in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State.” Ableman v. Booth, 62 U.S. (21 How.) 506, 524, 16 L.Ed. 169 (1858) (emphasis added).
“[E]very State has plighted to the other States to support the Constitution as it is, in all its provisions, until they shall be altered in the manner which the Constitution itself prescribes. In the emphatic *1070 language of the pledge required, it is to support this Constitution.”
62 U.S. (21 How.) at 525.
c. Enforcing the Qualifications Clause
The qualifications clause is justiciable. In two cases federal district courts have upheld decisions of state officials, including secretaries of state, who refused to qualify proposed candidates for the presidential ballot who were less than 35 years old. In Socialist Workers Party of Illinois v. Ogil-vie, 357 F.Supp. 109 (N.D.I11.1972), the court declined to enjoin the decision of the State Electoral Board, which included as a member the Illinois Secretary of State, refusing to place on the presidential ballot the Socialist Workers Party candidate for President, who was admittedly 31 years old. The candidate, the court found, “does not fulfill the eligibility requirements specified in Article II, Section 1 of the United States Constitution.” 357 F.Supp. at 113. Recently, in Peace & Freedom Party v. Bowen, 912 F.Supp.2d 905 (E.D.Cal.2012), the court upheld a decision of the California Secretary of State refusing to list Peta Lindsay on the 2012 primary ballot as the Peace and Freedom Party candidate for President. The Court noted that Lindsay, whose attorney admitted in a letter that she was 27 years old, “is ineligible to serve as president due to her age.” 912 F.Supp.2d at 908.
These cases address situations in which allegedly ineligible presidential candidates have sought judicial relief from the decisions of state election officials excluding them from the ballot because they were underage. See also Hassan v. Colorado, 870 F.Supp.2d 1192, 1195 (D.Colo.2012), affd, 495 Fed.Appx. 947 (10th Cir.2012) (denying a motion to enjoin the Colorado Secretary of State from refusing to certify for the presidential ballot a naturalized citizen who could not affirm that he was “ ‘a natural-born citizen of the United States’”). The case before us seeks inverse relief: to require the Secretary of State to investigate for ineligibility candidates she has already certified for the presidential-election ballot and to screen all such candidates for eligibility in the future. In Jones v. Bush, 122 F.Supp.2d 713 (N.D.Tex.2000), affd, 244 F.3d 134 (5th Cir.2000) (table), registered voters in Texas sought an injunction to restrain the 32 Texas electors from casting their votes for both George W. Bush as President and Richard B. Cheney as Vice President on the ground that both were inhabitants of Texas in violation of the first clause of the Twelfth Amendment.[23] The court found that the voters lacked standing for failure to show particularized injury, id. at 716-18, but nevertheless addressed the merits of the case to “assist the parties in obtaining full appellate review in the short period that remains before the Electoral College votes.” Id. at 718. Equating the term “inhabitant” as used in the Twelfth Amendment with the term “domicile” as used in personal-jurisdiction law, the court found that Mr. Cheney was domiciled in, and thus an inhabitant of, Wyoming. Accordingly, the plaintiffs failed to satisfy their burden to show a likelihood of success on the merits of their claim that the Vice President-elect was an inhabitant of Texas. Id. at 718-21.
In Jones v. Bush, the court directly adjudicated, although as dicta, an alleged violation of an eligibility provision of the United States Constitution without any auxiliary grounding in state law. In this case the plaintiffs seek to require the Alabama Secretary of State to respect her *1071 duty and oath of allegiance to the United States Constitution either as an adjunct requirement to the “otherwise qualified” phrase in § 17-9-3 or as a freestanding duty under the United States Constitution. The presidential-eligibility provisions of the United States Constitution, where unambiguous and directly applicable to the actions of a particular state official, do not require the existence of a parallel state statute to be enforceable. Otherwise a state could nullify within its borders the eligibility provisions of the federal constitution simply by not passing enabling legislation.
“Constitutional provisions are presumed to be self-executing.” 16 C.J.S. Constitutional Law § 89 (2005). “A constitutional provision is considered to be self-executing when additional legislation is not required for it to be effective.” Cole v. Riley, 989 So.2d 1001,1005 n. 2 (Ala.2007). The qualifications clause prohibits anyone from being eligible for the office of President who does not meet the three qualifications stated therein. “[Ujsually no legislation is required to effectuate a constitutional provision that is prohibitory in its language .... ” 16 Am.Jur.2d Constitutional Law § 101 (2009).
As the gatekeeper for presidential-ballot access in Alabama, the Secretary of State is the official upon whom rests the duty to enforce the qualifications clause. “A state acts by its legislative, its executive, or its judicial authorities. It can act in no other way.” Ex parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676 (1879). If the responsible state official could defy or deliberately ignore the Constitution, “the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases.” Sterling v. Constantin, 287 U.S. 378, 397-98, 53 S.Ct. 190, 77 L.Ed. 375 (1932). “ ‘[A]n official, whose duty it was to enforce the law, [may not] disregard the very law which it was his duty to enforce. ...’” Faubus v. United States, 254 F.2d 797, 807 (8th Cir.1958) (quoting Strut-wear Knitting Co. v. Olson, 13 F.Supp. 384, 391 (D.Minn.1936)). Compare Seay v. Patterson, 207 F.Supp. 755, 756 (M.D.Ala. 1962) (noting that “the governor of a state when he acts or fails to act in his official capacity must be and is always subject to the constitutional limitations imposed upon him by the Constitution of the United States”).
To the extent that state laws did not empower the Secretary of State to implement the requirements of the qualifications clause or even forbade her so to act, such laws would have to recede before her oath to support the Constitution and the superi- or mandate of the Supremacy Clause. “[Conflicting obligations” under state law are “without effect” in the face of superseding federal law. Washington v. Washington State Commercial Passenger Fishing Vessel Ass’n, 443 U.S. 658, 691-92, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). Section 17-14-31 requires the Secretary of State to place the names of national-convention nominees on the presidential ballot without any necessity to examine their qualifications unless the candidates ran in the presidential primaries. This provision cannot diminish the eligibility requirements of the presidential-qualifications clause. “There is no such avenue of escape from the paramount authority of the Federal Constitution.” Sterling, 287 U.S. at 398.
Further, the Secretary of State may not expressly disavow in her official capacity a requirement of the United States Constitution that she is bound by oath to support and that directly implicates her duties as an executive officer of the State. “The States and their officers are bound by obligations imposed by the Constitution_” Alden v. Maine, 527 U.S. 706, *1072 755, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Two scholars observe:
“[P]owerful rule-of-law concerns militate against the proposition that state actors ought to be able to ignore some parts of the Constitution on the ground that those parts really aren’t all that important. The very point of a written constitution, one might think, is to put such arguments off limits to the governmental officials who are bound by the document’s requirements.”
Sanford Levinson & Ernest A. Young, Who’s Afraid of the Twelfth Amendment?, 29 Fla. St. U.L.Rev. 925, 943 (2001). As Chief Justice John Marshall noted: “To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained?” Marbury v. Madison, 5 U.S. (1 Cranch) at 176. The statement of the Deputy Secretary of State in an agency capacity that the Secretary of State’s “office would not investigate the legitimacy of any candidate” is legally untenable, as is the statement of the Secretary of State in her motion to dismiss that she “has no legal duty to investigate the qualifications of a candidate.” Under both the Supremacy Clause and the oath she took to support the United States Constitution, the Secretary of State has a legal duty to observe the presidential-eligibility requirements of Article II, § 1,. clause 4 of the United States Constitution. She may not refuse to recognize this duty without violating her oath of office or offending the Supremacy Clause.[24] The absence of a specific state-law requirement to enforce the qualifications clause does not operate as a waiver of her superior duty under federal constitutional law. “The laws of the United States are as much a part of the law of Alabama as its own local laws.” Forsyth v. Central Foundry Co., 240 Ala. 277, 282, 198 So. 706, 710 (1940).

IV. Remedy

Under Alabama law, the Secretary of State is bound by the “otherwise qualified” clause of § 17-9-3 in making a decision to print on the general-election ballot the names of presidential candidates nominated by a national convention who have also participated in the presidential-preference primary. Those qualifications include the requirements of the presidential-qualifications clause that the Secretary of State is bound by oath and the Supremacy Clause to observe. Because the mandate of the presidential-qualifications clause is self-executing, its effectiveness does not depend on implementing legislation. Thus, regardless of state law, the Secretary of State has a duty to observe the requirements of the presidential-qualifications clause in certifying any candidate for the presidential ballot in the general election.
Section 17-16-44 forbids any state court from ordering the Secretary of State to decertify the votes cast for a presidential candidate after a general election has taken place. Further, any remedy in regard to the qualifications of a President-elect is a congressional responsibility. Once the election of 2012 occurred and Alabama’s electoral votes were certified by the Governor and cast on the day designated, the State lost jurisdiction under both state and federal law to alter its electoral votes, thereby making issues of ineligibility or decertification moot. Under the “capable of repetition, yet evading review” exception to mootness, however, the circuit *1073 court should have granted the petition for a writ of mandamus to the extent of ordering the Secretary of State to recognize and implement in future presidential elections the mandate of the federal constitution that presidential candidates satisfy the citizenship requirement of Art. II, § 1, cl. 4, of the United States Constitution.
The Secretary of State is a constitutional officer. Art. V, § 134, Ala. Const.1901. The manner in which the Secretary of State implements the federal constitutional mandate falls in the first instance within her executive discretion. Henley v. Birmingham Trust Nat’l Bank, 295 Ala. 38, 56, 322 So.2d 688, 704 (1975) (Maddox, J., dissenting on other grounds) (noting that the attorney general “is a constitutional officer and is vested with executive discretion”). The plaintiffs sought a writ of mandamus from the circuit court ordering the Secretary of State to require from each presidential candidate a verified birth certificate. Presentation of a birth certificate is indeed a common means of determining age and citizenship.[25] Although I would not prescribe the manner in which the Secretary of State is to verify eligibility of presidential candidates, I believe she has a duty as the chief elections official of Alabama to implement the natural-born-citizen requirement of Article II, § 4, of the United States Constitution.

V. Conclusion

Although the plaintiffs’ request for relief is moot as to the legality, conduct, and results of the 2012 election, under the “capable of repetition, yet evading review” exception to mootness, the circuit court, in my view, should have granted the petition for a writ of mandamus to the extent of ordering the Secretary of State to implement the natural-born-citizen requirement of the presidential-qualifications clause in future elections.
Furthermore, I believe the circuit court should have granted the petition for a writ of mandamus to order the Secretary of State to investigate the qualifications of those candidates who appeared on the 2012 general-election ballot for President of the United States, a duty that existed at the time this petition was filed and the object of the relief requested. Although the removal of a President-elect or a President who has taken the oath of office is within the breast of Congress, the determination of the eligibility of the 2012 presidential candidates before the casting of the electoral votes is a state function.
This matter is of great constitutional significance in regard to the highest office in our land. Should he who was elected to the presidency be determined to be ineligible, the remedy of impeachment is available through the United States Congress, and the plaintiffs in this case, Mclnnish and Goode, can pursue this remedy through their representatives in Congress.
For the above-stated reasons, I dissent from this Court’s decision to affirm the judgment of the circuit court dismissing this action on the motion of the Secretary of State.

. While this case was pending on appeal, Secretary Bennett, who took office on August 1, 2013, was substituted as the appellee for his predecessor, Beth Chapman. See Rule 43(b), Ala. R.App. P. Because the trial below and the filings on appeal took place before Secretary Bennett’s appointment, I will generally, in keeping with the record, refer to Beth Chapman as the Secretary of State in this writing.

. "The Secretary of State is the chief elections official in the state and shall provide uniform guidance for election activities.” § 17 — 1—3(a), Ala.Code 1975.

. The presidential-qualifications clause, of which the natural-born-citizen requirement is a part, also denies eligibility for the office of President to any person "who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States.” U.S. Const. Art. II, § 1, cl. 4.

. Because the Secretary of State has not challenged the correctness of this statement, I do not consider whether it might be hearsay or, alternatively, an admission by a party opponent. See Rule 801(d), Ala. R. Evid. In her renewed motion to dismiss, ¶ 1, Secretary *1056 Chapman asserted that she "has no legal duty to investigate the qualifications of a candidate. ...” See Peace & Freedom Party v. Bowen, 912 F.Supp.2d 905, 907 (E.D.Cal.2012) (finding that an attorney’s statement admitting that the plaintiff, who sought placement on the presidential primary ballot, was only 27 years old was nonhearsay under Rule 801(d)(2), Fed.R.Evid.).

. "Praecipe” is defined as "a writ ordering a defendant to do some act or to explain why inaction is appropriate” and "[a] written motion or request seeking some court action.” Black’s Law Dictionary 1292 (9th ed.2009).

. "[E]lections happen every year and the potential for harm is just as present in the next election cycle. This claim must therefore move forward and be heard so as to prevent this harm from occurring not only during this election but for future elections as well.” Plaintiffs’ Opp. to Def's Renewed Motion to Dismiss, at 2.

. “Since we have elections pretty much every year, the potential harm is here that we would have an issue that would have evaded review.” Transcript of Proceedings on Motion to Dismiss, Dec. 6, 2012, at 6 (statement of plaintiffs’ attorney Dean Johnson).

.During the hearing on the motion to dismiss, the plaintiffs' attorney quoted this passage and stated: "So we have an Alabama case that points out this case is not moot.”

. The Secretary of State argues that this case is not capable of repetition because President Obama may not constitutionally run for a third term. Secretary of State's brief, at 8-9 (citing U.S. Const, amend. XXII, § 1). President Obama, however, is not the defendant in this case; the Secretary of State is, and her refusal to investigate the eligibility of presidential candidates for the general-election ballot is capable' of repetition.

. Although this Court used the phrase "and those similarly situated” to describe future potential plaintiffs, Ezell was not a class action.

. For a list of the qualifications for state office in Alabama, see § 36-2-1, Ala.Code 1975. “A candidate for public office must show that he meets the eligibility requirements of all categories of § 36-2-1 (a)....” Osborne v. Banks, 439 So.2d 695, 698 (Ala. 1983).

. By contrast, the Florida Supreme Court reviewed a contest of the vote in the 2000 presidential election under Fla. Stat. § 102.168, which provides that " 'the certification of election ... of any person to office [except for state legislators] ... may be contested in the circuit court.’ ” Gore v. Harris, 772 So.2d 1243, 1251 n. 9 (Fla.2000) (emphasis added), rev’d on other grounds, Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000).

. The President-elect becomes President at the inauguration held on January 20. U.S. Const, amend XX. When a presidential candidate becomes the President-elect, however, is a matter of definition. The three possible dates are the general election in early November, the date the electors cast their ballots in mid-December, 3 U.S.C. § 7, and the counting of the electoral votes by Congress on January 6. 3 U.S.C. § 15. The most relevant date for this analysis is the date the electors cast their votes. Between the November general election and the casting of electoral votes in mid-December, a state, if it chooses, is at liberty to resolve any “controversy or contest” in regard to the selection of its electors, if done at least six days before the electors “meet and give their votes.” 3 U.S.C. §§ 5 and 7. Thus, under federal law, the states are empowered to resolve challenges to the validity of electors, and by implication the candidates to whom they are pledged, for about a month beyond election day. Alabama has not enacted legislation to avail itself of this option. Section 17-16-44 removes from Alabama courts the jurisdiction to hear such challenges.

. After the 1872 election, Congress rejected three electoral votes cast for Horace Greeley, who was ineligible for office, having died three weeks after the election. Cong. Globe, 42d Cong., 3d Sess. 1285-87, 1289 (1873).

. Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000), appears to be an exception to this principle. See Erwin Chemerinsky, Bush v. Gore was not Justicia-ble, 76 Notre Dame L.Rev. 1093 (2001); see also Erwin Chemerinsky, How Should We Think about Bush v. Gore?, 34 Loy. U. Chi. L.J. 1, 2 (2002) (describing George W. Bush as “the first President chosen by the Supreme Court”). In Bush v. Gore, neither party raised the justiciability question and the Court did not address it.

. Congress is also free to pass legislation in aid of the presidential-qualifications clause. See, e.g., H.R. 1503, 111th Cong. (1st Sess. 2009) (seeking to amend federal campaign law to require the principal campaign committee of a presidential candidate to include a copy of the candidate’s birth certificate with its statement of organization).

. In the first presidential election five state legislatures directly appointed the electors without any participation by the voters. McPherson, 146 U.S. at 29-30. Today "in each of the several States the citizens themselves vote for Presidential electors.” Bush v. Gore, 531 U.S. at 104.

. The Secretary of State argues that she does investigate the qualifications of candidates in "a very specific set of circumstances,” namely, "when she has knowledge gained from an official source while performing her duties as prescribed by law, that a candidate has not met a certifying qualification.” Secretary of State’s brief, at 11. The Attorney General's opinion on which she relies states: "The Code does not require the Secretary of State to determine whether each nominee meets all the qualifications for his or her particular office.” Op. Att’y Gen. No. 1998-00200 (August 12, 1998), at 3. Further, “the Secretary of State has no duty to investigate facts not within his official knowledge...." Id., at 5. The Attorney General's opinion, however, cites only state-law requirements for ballot access that may give rise to "official knowledge,” such as an ethics-commission notice or a duty to verify petition signatures. Id., at 3. The opinion does not mention the federal qualifications clause implicated in this case.

. "The Electors shall meet in their respective states, and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of .the same state with themselves....” U.S. Const. Amend. XII.

. See U.S. Term Limits, 514 U.S. at 817 (noting Thomas Jefferson's observation that " 'to add new qualifications to those of the Constitution would be as much an alteration as to detract from them' ” (quoting letter of Jan. 31, 1814, to Joseph C. Cabell, in 14 *1073 Writings of Thomas Jefferson 82 (A. Lipscomb ed. 1904) (emphasis added))).

. The plaintiffs assert that "a teenager applying for a learner's license must submit an original, bona fide birth certificate. The same is true for a Boy Scout before he joins a troop.” Plaintiffs' brief, at 37. See § 32-6-8(b), Ala.Code 1975 (stating that "[t]he age of the applicant [for a learner’s license] shall be substantiated by the applicant filing with the department a certified copy of his or her birth certificate”). Federal passport regulations state that a birth certificate is "[p] rimary evidence of birth in the United States.” 22 C.F.R. § 51.42(a).